CONFORMING COPY

FILED

1  ROBERT H. ROTSTEIN (SBN 72452)
   rxr@msk.com
2  PATRICIA H. BENSON (SBN 60565)
   phb@msk.com
3  JEAN PIERRE NOGUES (SBN 84445)
   jpn@msk.com
4  MITCHELL SILBERBERG & KNUPP LLP
   11377 West Olympic Boulevard
5  Los Angeles, California 90064-1683
   Telephone: (310) 312-2000
6  Facsimile: (310) 312-3100

7  Attorneys for Plaintiffs
   CBS Broadcasting, Inc.,
8  CBS Studios Inc., and
   Survivor Productions LLC

9

10

11                UNITED STATES DISTRICT COURT

12               CENTRAL DISTRICT OF CALIFORNIA

13

14  CBS BROADCASTING INC.,          CASE NO. CV12-4551-PA
    CBS STUDIOS INC., SURVIVOR                              (JCGx)
15  PRODUCTIONS LLC,                COMPLAINT FOR:

16          Plaintiffs,             **(1) COPYRIGHT INFRINGEMENT**

17                                  **(2) INDUCEMENT OF COPYRIGHT
                                    INFRINGEMENT**
18       v.
                                    **(3) CONTRIBUTORY COPYRIGHT
19  DISH NETWORK CORPORATION,       INFRINGEMENT**
    DISH NETWORK L.L.C.,
20                                  **(4) VICARIOUS COPYRIGHT
         Defendants.               INFRINGEMENT**
21

22

23

24       Plaintiffs CBS Broadcasting Inc., CBS Studios Inc., and Survivor

25  Productions LLC, by their counsel, allege against Defendants DISH Network

26  Corporation and DISH Network LLC:

27

28                                   1

Mitchell
Silberberg &
Knupp LLP

4650068.6

2012 MAY 24  PM 3: 30

CLERK U.S. DISTRICT COURT
CENTRAL DIST OF CALIF.
LOS ANGELES

BY _____

## NATURE OF ACTION

1.     Plaintiffs bring this action for preliminary and permanent injunctive relief against Defendants' unlawful scheme to profit from a new system for violating Plaintiffs' copyrights in prime-time, network television programming. Defendants market this infringing system in connection with their satellite broadcast services and digital video recorder ("DVR") called "the Hopper."  As described more fully below, through the infringing functions of the Hopper, *all of* Plaintiffs' prime-time, network television programs (along with the shows aired on the other national broadcast networks) are copied, on a continuous basis, and stored for eight days, to the Hopper – which provides massive storage capabilities during which the customer can permanently store that programming and view it with all of the individual commercials automatically skipped in their entirety. Significantly, when the viewer is in PrimeTime Anytime mode, the viewer is not in any way selecting the individual programs to be copied or the individual commercials to be skipped.

2.     Plaintiffs are among the largest and most successful producers and distributors of television programming in the United States and the world. Plaintiffs are engaged in the business of developing, producing, and/or distributing television programming for exhibition and dissemination, and of licensing those activities to others.  In addition to producing (and owning the copyrights in) thousands of television programs, Plaintiff CBS Broadcasting Inc. ("CBS") owns and operates television program services that delivers that programming (or programming created by third parties) to the American public.

3.     The Copyright Act, 17 U.S.C. § 101, *et seq.*, provides Plaintiffs with the exclusive rights to reproduce, adapt, distribute, and publicly perform and display their copyrighted television programming.  Plaintiffs exercise these rights in an ever-expanding variety of ways, including commercially supported broadcast

Mitchell
Silberberg &
Knupp LLP

2

4650068.6

television, syndicated television, Internet-based streaming and download services, video-on-demand access via licensed via multichannel video programming distributors ("MVPDs"), and Digital Versatile Discs ("DVDs") and Blu-Ray Discs. At this moment, consumers have access to network television programming through more authorized avenues than ever before. Through the unlawful functions of the Hopper, Defendants are infringing, and threaten to infringe, Plaintiffs' rights to exploit their copyrighted works in these legitimate markets. In doing so, Defendants deprive Plaintiffs of a fair return on their investments in creating and distributing some of the most valuable programming on television. Defendants' conduct is exactly what the copyright laws are intended to prevent.

4. Defendants violate Plaintiffs' exclusive rights by copying, without authorization, Plaintiffs' television programs and delivering these copies to computer hard drives resident in the homes of Defendants' subscribers. This conduct violates Plaintiffs' exclusive rights to reproduce and distribute copies under sections 106(1) and 106(3) of the Copyright Act, 17 U.S.C. §§ 106(1) and 106(3). Through their conduct, Defendants provide their customers with unlawful copies of works. That is straight-forward infringement.

5. To the extent that Defendants claim their customers create the infringing copies, Defendants' scheme is nevertheless unlawful. Defendants knowingly provide ongoing and material technological support to their customers in order to facilitate the automatic creation of infringing copies of prime-time shows and skipping commercials, which renders Defendants contributory infringers. Defendants induce, through their technology, advertising and other conduct, their customers to create unauthorized copies of Plaintiffs' programming in prime time and skip commercials, without viewers selecting which programs to record of which commercials to skip. Finally, Defendant are vicariously liable for their subscribers' conduct, to the extent that is relevant, because Defendants have

Mitchell
Silberberg &
Knupp LLP

3

4650068.6

1    the legal and practical right and ability to control the creation of infringing copies

2    of Plaintiffs' works and skipping commercials, from which Defendants obtain

3    direct financial benefits.  Defendants' contracts with subscribers allow Defendants

4    to control all programming and service options.   In addition, subscribers cannot

5    accomplish the systematic comprehensive prime time copying and commercial

6    skipping at issue without the technological system from Defendants.

7        6.        The Hopper allows Defendants and their customers to infringe

8    Plaintiffs' copyrights through the following interrelated features:

9        •  The Hopper provides a "PrimeTime Anytime" feature, which copies

10          to the customers' DVR the prime-time TV programming aired on

11          CBS and on the ABC, Fox, and NBC television networks, every

12          evening, on an eight-day rolling basis.  Significantly, this feature

13          copies the entire prime-time schedule of all the major networks,

14          without the viewer selecting the specific programs to be copied.

15       •  The Hopper provides what Defendants call the "Auto Hop" feature,

16          which enables the customer to watch the copied PrimeTime Anytime

17          programming with *all* commercial advertising *automatically* skipped

18          – and as more fully detailed below, Defendants market and actively

19          encourage the use of Auto Hop for that purpose.  Thus, significantly,

20          the viewer is not in any way selecting the individual commercials to

21          be skipped.

22       •  The Hopper provides a memory capacity of two terabytes (*i.e.*, 2,000

23          gigabytes), which, Defendants boast, is capable of storing 2,000 hours

24          of recorded video, thus allowing the creation of large libraries of

25          prime-time television.  As Defendants themselves acknowledge, "no

26          other company offers" such capacity.

27

28                                              4

Mitchell
Silberberg &
Knupp LLP

4650068.6

7.   Thus, the Hopper effectively provides Defendants' customers with a premium commercial-free channel consisting, at any given point in time, of the copyrighted programming that aired in prime time on all four national broadcast networks in the past eight days, including without limitation, series currently airing on CBS, such as *60 Minutes, Blue Bloods, CSI: Crime Scene Investigation, Survivor, NCIS* and *The Good Wife*, along with the ability to create huge permanent, commercial-free libraries of those works.

8.   Plaintiffs have invested billions of dollars in their copyrighted content. the Hopper's methods of copying will deprive Plaintiffs of a vital means of payment for their works and erode the value of Plaintiffs' copyrighted programming.   "Prime time" is the bloc of the television programming schedule that attracts the most viewers, and advertisers therefore are willing to pay the highest prices to have their commercials shown during this time.   Television networks and local broadcast stations generally derive significant percentages of their advertising revenues from selling the right to advertise before, during or immediately after the prime-time television programming airs.   Advertisers will not pay, or will pay less, to have their advertisements placed within and around Plaintiffs' television programming if the advertisements will be made invisible to viewers.   Further, Plaintiffs recoup part of their substantial investments in creative programming by disseminating their prime-time programming, at a premium, in commercial-free formats, such as the sale of DVDs and Blu-Ray Discs.   The Hopper directly undercuts these legitimate markets for paid access to Plaintiffs' programming.   Moreover, the Hopper interferes with Plaintiffs' efforts to make their prime-time programming available to consumers for free through advertising-supported services, such as Internet streaming websites.   Views of such websites will decline if Defendants' subscribers have access to commercial-free copies of Plaintiffs' prime-time shows.   As a result, Defendants' unlawful conduct impairs

Mitchell
Silberberg &
Knupp LLP

5

4650068.6

1    the value of Plaintiffs' works and reduces the incentive for their creation and

2    dissemination. Indeed, Defendants' unlawful conduct attacks the fundamental

3    economic underpinnings of television programming delivery and therefore the very

4    means by which Plaintiffs' copyrighted works are paid for. In this way,

5    Defendants cause harm not only to Plaintiffs, but also to consumers.

6

7                                    **THE PARTIES**

8        9.       Plaintiff Survivor Productions, LLC is a Delaware limited liability

9    company with its principal place of business at 7800 Beverly Blvd. Los Angeles,

10   California. Plaintiff Survivor Productions LLC is actively engaged in the

11   production of television programming.

12       10.      Plaintiff CBS Broadcasting Inc. is a New York corporation with its

13   principal place of business at 51 West 52nd Street, New York, New York. Plaintiff

14   CBS Broadcasting is actively engaged in the production and distribution of

15   television programs and other copyrighted works.

16       11.      Plaintiff CBS Studios Inc. is a Delaware corporation with its principal

17   place of business at 51 West 52nd Street, New York, New York. Plaintiff CBS

18   Studios Inc. is actively engaged in the worldwide production and distribution of

19   copyrighted entertainment products.

20       12.      Plaintiffs are informed and believe, and therefore allege, that

21   Defendant DISH Network Corporation is organized under the laws of the State of

22   Nevada and has its principal place of business in Englewood, Colorado. Plaintiffs

23   are informed and believe, and therefore allege, that Defendant DISH Network LLC

24   is a wholly owned subsidiary of DISH Network Corporation, is organized under

25   the laws of the State of Colorado, and has its principal place of business in

26   Englewood, Colorado. Plaintiffs are informed and believe, and therefore allege,

27   that each Defendant was the agent, joint venture and/or employee of the other

28                                        6

Mitchell
Silberberg &
Knupp LLP

4650068.6

1   Defendant, and in doing the things hereinafter alleged, each was acting within the

2   course and scope of said agency, employment and joint venture with the advance

3   knowledge, acquiescence, and subsequent ratification of the other Defendant.

4       13.   Plaintiffs are informed and believe, and therefore allege, that DISH

5   Network Corporation and DISH Network LLC operate the third largest pay

6   television transmission system in the United States, servicing approximately 14

7   million customers as of September 30, 2011.

8

9                    **JURISDICTION AND VENUE**

10      14.   This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331

11   and 1338, and under the Copyright Act, 17 U.S.C. § 101 *et seq.*

12      15.   This Court has personal jurisdiction over Defendants, and venue is

13   proper in this Judicial District pursuant to 28 U.S.C. § 1391(b).  Defendants

14   conduct extensive commercial activities in this State, including in this Judicial

15   District.  Further, a substantial part of the events or omissions giving rise to this

16   lawsuit, as well as substantial injury to Plaintiffs, have occurred or will occur in

17   this District as a result of Defendants' acts of copyright infringement and

18   impending acts of copyright infringement, as alleged in detail below.  Venue is

19   also proper in this Judicial District pursuant to 28 U.S.C. § 1400(a) in that

20   Defendants may be found in this District in light of their extensive commercial

21   activities in this District.

22

23                    **FACTUAL BACKGROUND**

24   **Free Over-The-Air, Commercially Supported Broadcasting**

25      16.   CBS is one of the four major over-the-air television networks that

26   transmit programming to the public via hundreds of free, local, terrestrial broadcast

27   stations that carry the networks' content.  The networks' content is also

28                               7

Mitchell
Silberberg &
Knupp LLP

COMPLAINT FOR COPYRIGHT INFRINGEMENT, INDUCEMENT, CONTRIBUTORY INFRINGEMENT,
AND VICARIOUS INFRINGEMENT UNDER THE COPYRIGHT ACT

1    transmitted to the public by subscription-based cable and satellite companies,

2    including Defendant DISH Network, which pay license fees to retransmit the

3    content carried on local broadcast stations.  The networks, including Plaintiff CBS,

4    both create and license copyrighted content – largely entertainment, news and

5    sports programming – on which the public has come to rely for information and

6    entertainment.  Despite constant advances and developments in technology, the

7    four major networks and their affiliated local stations continue to account for a

8    large percentage of all television viewing in the United States, and each attracts

9    more viewers than any network distributed only by cable or satellite providers.

10           17.    A nationwide system of free, over-the-air local television stations,

11   which makes news, information, and entertainment available to virtually all

12   Americans without any need to pay subscription fees, has been a crucial public

13   policy goal in the United States since the advent of television.  The creation and

14   acquisition of the copyrighted content that has come to define free, over-the-air

15   television is made possible through commercial advertisements that are shown in

16   each program.  Whether viewers watch programming for free over-the-air or

17   through pay services (such as Defendants' service) that retransmit broadcast

18   signals, advertisements provide the primary means of payment for the copyrighted

19   works that the public views.  As alleged more fully below, Defendants' infringing

20   system completely blocks the delivery of advertising to viewers and thereby

21   deprives copyright owners of the means by which they are paid for their works.

22   Defendants' conduct diminishes both the value of the works and the incentive to

23   create and distribute original content over the medium.  By undermining the

24   economic engine supporting the production of content, Defendants' system

25   threatens to diminish the quantity and the quality of the programming Americans

26   have come to expect and demand.

27

28

Mitchell
Silberberg &
Knupp LLP

4650068.6

8

## Plaintiffs' Dissemination of Prime-Time Television Content

18.     The majority of Plaintiffs' most valuable programming airs during "prime time," which on the east and west coasts falls between the hours of eight p.m. and eleven p.m. Monday through Saturday, and seven p.m. to eleven p.m. on Sunday (and one hour earlier in the Central and Mountain time zones).  Plaintiffs own the United States copyrights in a substantial number of prime-time programs, including successful series currently airing on CBS, such as those listed in Paragraph 7 above.  Plaintiffs have registered or filed applications to register with the United States Copyright Office their copyrights in each of the works identified herein, as well as in each of the works listed in the schedule attached hereto as Exhibit A and incorporated herein by this reference.

19.     After a program airs on prime-time television, it is, in most cases, made available for viewing via another market, including through on-demand access on MVPD services; online purchase or rental by download (*e.g.*, iTunes and Amazon); mobile phone services; pay-per-view and location-based (*e.g.*, airline) services; and portable media (*e.g.*, DVDs and Blu-Ray Discs); as well as subscription streaming services over the Internet (*e.g.*, Netflix).  Further, the programs are often available on authorized Internet sites the day after airing in prime time, supported by unique commercial advertising.  Offerings in other media with differing characteristics also exist and are designed to maximize revenues for the copyright owner and any profit participants.

20.     Plaintiffs have invested (and continue to invest) substantial sums of money and effort each year to develop, produce, and distribute television programs.  The public benefits from Plaintiffs' creative activities, as intended by the U.S. Constitution and the Copyright Act.  Plaintiffs recoup their substantial investments in creative programming in a number of ways, including the following:

Mitchell
Silberberg &
Knupp LLP

9

4650068.6

- **Advertiser Supported Broadcasts**. National networks, including the one owned and operated by Plaintiff CBS Broadcasting Inc., and their owned television stations and independently-owned local affiliates, derive substantial value by selling advertising time during the programs they have created or licensed at enormous cost. Additional revenues are earned by broadcast television networks and their parent companies through fees paid by network-affiliated stations and by licensees of their copyrighted programs in the off-network syndication market. More income is generated by the licensing of programs produced and owned by Plaintiff CBS Studios Inc. to other television networks. These sources of revenue as well are ultimately dependent on the ability of the licensee broadcasters to sell commercial advertising in or adjacent to the programs.

- **Video On-Demand ("VOD") Television Access**. Plaintiffs license cable operators to make copyrighted works available for viewing on demand by their customers as an added benefit of their subscriptions. In addition to license fees from these MVPDs, these arrangements allow for the sale of unique advertising in the VOD versions of the programs owned by Plaintiffs.

- **On-Demand Online Access**. Plaintiffs earn revenue by providing access to their copyrighted works via their websites, the websites of their affiliates, and the websites and services of licensees. Some of these models involve showing advertisements to consumers before, after, or during viewing. These advertisements cannot be skipped or fast forwarded. Other models involve subscription payments to services (such as Netflix) that license Plaintiffs' content to offer to their subscribers commercial-free, payments for the purchase of

Mitchell
Silberberg &
Knupp LLP

10

downloaded copies (also generally without advertising), or rental payments (for time-limited windows to view content).

- **Domestic Syndication.** Plaintiffs generate revenue by licensing their copyrighted works for "syndicated" exhibition on both broadcast and non-broadcast television channels. For Plaintiffs, most syndication activity involves delivery of programming that has already aired on the CBS Television Network at an earlier date. In addition to fees paid to Plaintiffs by broadcast and non-broadcast television channels, an additional significant means by which Plaintiffs generate revenue from syndication is through sharing in the advertising revenue resulting from ads within the syndicated programs.

- **Fixed Media.** Plaintiffs generate substantial revenue from the sale or rental for home viewing of authorized copies of their copyrighted works in various formats, including DVD and Blu-Ray Discs. Plaintiffs offer these formats at various price points, with different offerings providing different levels of access to content. These formats typically do not include advertisements, other than occasional "trailers" at the beginning of a disc.

## Defendants' Infringing Service

21.    On or about March 15, 2012, Defendants made the Hopper available to its customers. The Hopper's "PrimeTime Anytime" option automatically records prime-time programming shows on CBS, NBC, ABC, and Fox, every day, to the customers' DVR, which as alleged above, stores up to 2000 hours of content. (Significantly, the feature copies the prime-time schedule of all the major networks, without the viewer selecting the specific programs to be copied.) The prime-time programming, including that of Plaintiffs, is automatically stored on

1    the DVR for eight days and can be stored permanently.  On or about May 10, 2012,

2    Defendants began offering a companion service, called "Auto Hop," which

3    automatically skips commercials during viewing.

4         22.    The Hopper is thus specifically designed to function as an on-demand

5    video, and a video library, service.  Defendants boast that the Hopper is unlike any

6    other DVR offered by a television service provider.  On their website, an image

7    from which is attached hereto as Exhibit B and incorporated by reference,

8    Defendants refer to the Hopper as an "on-demand" service that permits the creation

9    of video "libraries" of copyrighted prime-time content commercial free.  For

10   example, Defendants market the Hopper as follows:

11        With the Hopper's exclusive feature, PrimeTime Anytime™, three

12        hours of HD primetime programming are available to you On Demand

13        for up to 8 days from initial air date.  Plus you can save your favorite

14        primetime content forever.  You can also automatically skip

15        commercials in primetime TV – ABC, CBS, FOX and NBC in HD.

16        23.    During an interview while demonstrating the Hopper, a representative

17   of Defendants stated:  "I don't think you'd need Hulu or Hulu Plus after this."  In

18   other words, Defendants tell their customers that the Hopper can be used as a

19   substitute for Internet-based on-demand services.  On legitimate services similar to

20   Hulu, Plaintiffs make their programming available in advertising-supported, rental,

21   purchase, and subscription models.

22        24.    Defendants also tout the Hopper's ability to provide commercial-free,

23   on-demand program libraries to their customers:

24        Hate commercials?  DISH created commercial-free TV so you can

25        save an hour each night!  Now you can automatically skip

26        commercials in primetime TV- on ABC, CBS, FOX and NBC in HD.

27        Only on the Hopper.  Only from DISH.

28                                                           12

Mitchell
Silberberg &
Knupp LLP

4650068.6

25.     Vivek Khemka, vice president of DISH Product Management, described the infringing service as follows:

> With the Auto Hop capability of the Hopper, watching your favorite shows commercial-free is easier than ever before. It's a revolutionary development that no other company offers and it's something that sets Hopper above the competition. … With Hopper, you have access to all primetime HD programs broadcast by the four major networks. Now you can watch many of those shows commercial-free, with Auto Hop.

### Irreparable Harm to Plaintiffs As a Result of Defendants' Infringement

26.     Defendants' brazen copyright infringement threatens Plaintiffs' ability to earn revenue from their copyrighted works through existing and potential methods of dissemination. Unless enjoined, Defendants' illegal conduct will irreparably injure Plaintiffs in numerous ways that are incapable of calculation or redress through monetary damages. Defendants' unlawful scheme will also ultimately harm the public, because it will divert revenue from the creators and licensors of original programming to Defendants, thereby threatening to decrease the output of copyrighted works and the investment therein.

## CLAIMS FOR RELIEF

## COUNT I

## (COPYRIGHT INFRINGEMENT IN VIOLATION OF THE COPYRIGHT ACT, 17 U.S.C. §§ 101, *ET SEQ.*)

27.     Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1 through 4 and paragraphs 6-26, as though fully set forth herein.

Mitchell
Silberberg &
Knupp LLP

13

4650068.6

28.     Plaintiffs are the copyright owners of the works listed in Exhibit A, as well as many other television programs telecast in the United States, each of which contains a large number of creative elements wholly original to Plaintiffs and which are copyrightable subject matter under the laws of the United States.

29.     Plaintiffs have obtained (or have applied for) copyright registration certificates for each work listed in Exhibit A. In doing so, Plaintiffs have complied in all respects with 17 U.S.C. § 101, *et seq.* and all other laws governing federal copyrights.

30.     Each of the works listed in Exhibit A, has, with authorization of Plaintiffs, been exploited in strict conformity with the provisions of 17 U.S.C. §§ 401 and 409, *et seq.*, and all other laws governing federal copyright.

31.     DISH creates Primetime Anytime's "on demand library of approximately 100 hours primetime of TV shows" by recording, without authorization, all programming aired by the four national broadcast networks during primetime hours every night. On information and belief, the programming recorded by DISH through the Primetime Anytime service consists exclusively of copyrighted network programming, including Plaintiffs' copyrighted content. On further information and belief, Defendants' copying in connection with PrimeTime Anytime occurs on a partitioned section of The Hopper's hard drive that is fully under Defendants' ongoing remote control. By creating and distributing unauthorized copies of Plaintiffs' works (including the works listed on Exhibit A) through PrimeTime Anytime in the manner described above, Defendants are engaging in and imminently will engage in a vast number of direct copyright infringements, in violation of sections 106(1), 106(3) and 501 of the Copyright Act, 17 U.S.C. §§ 106(1), 106(3) and 501.

Mitchell
Silberberg &
Knupp LLP

14

32.    The foregoing acts of direct infringement by Defendants are unauthorized and unlicensed by Plaintiffs and are not otherwise permissible under the Copyright Act.  Plaintiffs did not consent to Defendants' copying.

33.    These acts of infringement have been willful, intentional, and purposeful, in disregard of Plaintiff's rights under the Copyright Act.  Defendants know that their acts are infringing and intentionally or recklessly disregard the law by their conduct.

34.    These acts have caused and will continue to cause substantial irreparable harm to Plaintiffs that cannot fully be compensated or measured in money to Plaintiffs unless further infringement is enjoined and restrained by this Court.  Plaintiffs have no adequate remedy at law because damages would be difficult to ascertain and Plaintiffs should not be expected to suffer the blatant infringement in which Defendants are engaging or threatening to engage.  The balance of equities favors Plaintiffs because Defendants could easily cease their operation of the infringing services whereas Plaintiffs' rights will be permanently devalued if the infringing conduct continues.  Finally, the public interest favors injunctive relief because the goals of the Copyright Act, including increased creation and output of creative works, will be undermined by the persisting infringements committed by Defendants. Accordingly, pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to preliminary and permanent injunctions prohibiting further infringements of Plaintiffs' copyrights.

## COUNT II

## (INDUCEMENT OF COPYRIGHT INFRINGEMENT IN VIOLATION OF THE COPYRIGHT ACT, 17 U.S.C. §§ 101, *ET SEQ.*)

35.    Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1 through 3 and paragraph 5 through 30, as though fully set forth

Mitchell
Silberberg &
Knupp LLP

15

4650068.6

herein.

36.     Users of the Hopper's PrimeTime AnyTime feature who record Plaintiff's prime-time shows and use the Hopper's Auto Hop feature to automatically skip commercials otherwise contained in those recordings infringe Plaintiffs' exclusive reproduction rights under section 106 of the Copyright Act, 17 U.S.C. § 106(1).

37.     Users of the Hopper's PrimeTime Anytime feature who record Plaintiff's prime-time shows and who store said recordings permanently or for long periods of time for commercial-free viewings at times of their choosing infringe Plaintiffs' exclusive reproduction rights under section 106 of the Copyright Act, 17 U.S.C. § 106(1).

38.     Plaintiffs have not authorized persons to engage in the acts described in paragraphs 36 and 37 or consented to such acts.

39.     Defendants have induced the infringing acts, and the threatened infringing acts, of their customers described above, in violation of sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.  Defendants provide the Hopper and its PrimeTime Anytime and Auto Hop features with the object of promoting their use for infringement.

40.     Defendants' conduct demonstrates Defendants' purposeful promotion of infringement.  Among other things:

- Defendants have marketed the Hopper expressly for copying and creating libraries of Plaintiffs' works and then viewing them commercial free.
- Defendants' marketing efforts have included targeting known markets for infringement, including consumers who wish to obtain access to commercial-free programming without payment and consumers who

Mitchell
Silberberg &
Knupp LLP

16

4650068.6

1    wish to avoid paying market prices for permanent copies of

2    commercial-free programs.

3    • Defendants have expressly marketed their services as substitutes for

4    licensed methods of accessing Plaintiffs' works, including iTunes and

5    other video-on-demand services.

6    • Defendants have refused to use readily available technological means

7    to limit or prevent infringement by their customers.  In fact,

8    Defendants expressly designed their services to facilitate infringement

9    and make infringing acts virtually effortless.

10    41.    Defendants' inducement of their customers' infringement is, and at all

11    times has been, willful, intentional, and purposeful, in knowing disregard of

12    Plaintiffs' rights under the Copyright Act.  Defendants know that their acts are

13    inducing infringing conduct. Defendants intentionally or recklessly disregard the

14    law by their conduct.  Plaintiffs have not authorized or consented to defendants'

15    conduct.

16    42.    Defendants' acts have caused and will continue to cause substantial

17    irreparable harm to Plaintiffs that cannot fully be compensated or measured in

18    money unless further infringement by Defendants is enjoined and restrained by this

19    Court. Plaintiffs have no adequate remedy at law because damages would be

20    difficult to ascertain and Plaintiffs should not be expected to suffer Defendants'

21    blatant infringement.  The balance of equities favor Plaintiffs because Defendants

22    could easily cease their operation of the infringing services whereas Plaintiffs'

23    rights will be permanently devalued if the infringing conduct continues.  Finally,

24    the public interest favors injunctive relief because the goals of the Copyright Act,

25    including increased creation and output of creative works, will be undermined by

26    the persisting infringements committed by Defendants' customers.  Pursuant to 17

27

28                                                    17

Mitchell
Silberberg &
Knupp LLP

4650068.6

COMPLAINT FOR COPYRIGHT INFRINGEMENT, INDUCEMENT, CONTRIBUTORY INFRINGEMENT,
AND VICARIOUS INFRINGEMENT UNDER THE COPYRIGHT ACT

U.S.C. § 502, Plaintiffs are entitled to preliminary and permanent injunctions prohibiting further infringements of Plaintiffs' copyrights.

**COUNT III**

**(CONTRIBUTORY COPYRIGHT INFRINGEMENT IN VIOLATION OF THE COPYRIGHT ACT, 17 U.S.C. §§ 101, *ET SEQ.*)**

43.　Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1 through 3, paragraphs 5 through 30, and paragraphs 36 through 37, as though fully set forth herein.

44.　By participating in, facilitating, assisting, enabling, materially contributing to, and encouraging the infringing reproductions of Plaintiffs' works described above in paragraphs 36 through 37, with full knowledge of their illegal consequences, and with the ability to take simple measures to prevent or limit infringement, Defendants are contributing to infringements of Plaintiffs' copyrighted works, in violation of sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501. Defendants make the infringement described above in paragraphs 36 through 37 possible and provide the site and facilities for the infringements.

45.　Defendants know or have reason to know of the actual or imminent infringement of Plaintiff's copyrights. Indeed, on information and belief, Defendants monitor their customers' infringing activity and technologically and personally assist their customers throughout their illegal acts. DISH Networks' service agreement with its customers states that it collects information regarding "the programming service options [customers] have chosen." The agreement also states: "When you use our interactive or other transactional television services, the satellite system automatically collects certain information on your use of these services."

18

46.   Defendants' contributions to their customers' infringement have been willful, intentional, and purposeful, in knowing disregard of Plaintiff's rights under the Copyright Act. Defendants know that their acts are contributing to infringing conduct and Defendants intentionally or recklessly disregard the law by their conduct. Plaintiffs have not authorized or consented to Defendants' conduct.

47.   Defendants' acts have caused and will continue to cause substantial irreparable harm that cannot fully be compensated or measured in money to Plaintiffs unless further infringement by Defendants is enjoined and restrained by this Court. Plaintiffs have no adequate remedy at law because damages would be difficult to ascertain and Plaintiffs should not be expected to suffer Defendants' blatant infringement. The balance of equities favors Plaintiffs because Defendants could easily cease their operation of the infringing services whereas Plaintiffs' rights will be permanently devalued if the infringing conduct continues. Finally, the public interest favors injunctive relief because the goals of the Copyright Act, including increased creation and output of creative works, will be undermined by the persisting infringements committed by Defendants' customers. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to preliminary and permanent injunctions prohibiting further infringements of Plaintiffs' copyrights.

## COUNT IV

### (VICARIOUS COPYRIGHT INFRINGEMENT IN VIOLATION OF THE COPYRIGHT ACT, 17 U.S.C. §§ 101, *ET SEQ.*)

48.   Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1 through 3, paragraphs 5 through 30, and paragraphs 36 through 37, as though fully set forth herein.

49.   Defendants have the right and ability to supervise and control the infringing conduct of their customers described above in paragraphs 36 and 37.

Mitchell
Silberberg &
Knupp LLP

19

4650068.6

1 | DISH Networks' contract with their customers states:

2 | We may add, delete, rearrange and/or change any and all

3 | programming, programming packages and other Services that we

4 | offer, as well as the prices and fees related to such programming,

5 | programming packages and Services, at any time, including without

6 | limitation, during any term commitment period to which you have

7 | agreed.

8 | 50.    Defendants' regular involvement in their customers' copying is an

9 | indispensable link in such infringing conduct.  Defendants control their customers'

10 | ability to record prime-time content and go to great lengths and efforts to enable

11 | their customers to skip entire commercial segments.  In order to achieve this goal,

12 | Defendants must study the shows that are transmitted and make certain data

13 | available to the devices resident in the homes of customers.  Absent Defendants'

14 | conduct, customers simply could not automatically skip commercials.

15 | 51.    On information and belief, all of the infringing activity is actively

16 | monitored by Defendants.  DISH Networks' service agreement with its customers

17 | states that it collects information regarding "the programming service options

18 | [customers] have chosen."  The agreement also states:  "When you use our

19 | interactive or other transactional television services, the satellite system

20 | automatically collects certain information on your use of these services."

21 | 52.    Defendants also receive a direct financial benefit from the

22 | infringement described above in paragraphs 36 through 37 above.  Plaintiff is

23 | informed and believes, and therefore alleges, that Defendants have attracted,

24 | obtained and retained customers as a result of their infringing offerings.  The

25 | PrimeTime Anytime and Auto Hop features constitute draws to Defendants'

26 | services.  Defendants actively advertise the infringing capabilities of the Hopper.

27 | And, Defendants receive subscription payments from customers who possess the

28 |

Mitchell
Silberberg &
Knupp LLP

20

4650068.6

1 | Hopper.

2 |      53.    Defendants' refusal to stop or limit its customers' infringements has

3 | been willful, intentional, and purposeful, in knowing disregard of Plaintiffs' rights

4 | under the Copyright Act. Defendants know that their acts are contributing to

5 | infringing conduct and Defendants intentionally or recklessly disregard the law by

6 | their conduct. Plaintiffs have not authorized or consented to Defendants' conduct.

7 |      54.    Defendants' acts have caused and will continue to cause substantial

8 | irreparable harm to Plaintiffs that cannot fully be compensated or measured in

9 | money unless further infringement by Defendants is enjoined and restrained by this

10 | Court. Plaintiffs have no adequate remedy at law because damages would be

11 | difficult to ascertain and Plaintiffs should not be expected to suffer Defendants'

12 | blatant infringement. The balance of equities favor Plaintiffs because Defendants

13 | could easily cease their operation of the infringing services whereas Plaintiffs'

14 | rights will be permanently devalued if the infringement continues. Finally, the

15 | public interest favors injunctive relief because the goals of the Copyright Act,

16 | including increased creation and output of creative works, will be undermined by

17 | the persisting infringements committed by Defendants' customers. Pursuant to 17

18 | U.S.C. § 502, Plaintiffs are entitled to preliminary and permanent injunctions

19 | prohibiting further infringements of Plaintiffs' copyrights.

20 |

21 | **PRAYER FOR RELIEF**

22 |      WHEREFORE, Plaintiffs pray that this Court enter judgment in their favor

23 | and against Defendants, and each of them, as follows:

24 |      (a)    On Counts I through IV, preliminarily and permanently enjoin,

25 | pursuant to 17 U.S.C. § 502, Defendants, their respective officers, agents, servants,

26 | employees, and those persons in active concert or participation with Defendants, or

27 | any of them, from inducing infringement or directly, contributorily, and/or

28 | 21

Mitchell
Silberberg &
Knupp LLP

1  vicariously infringing by any means, including but not limited to specifically in

2  connection with the Hopper's PrimeTime Anytime and Auto Hop features,

3  Plaintiffs' exclusive rights under the Copyright Act, including, but not limited to

4  any of Plaintiffs' rights in any of the works listed on Exhibit A, and from licensing

5  any other person to do the same;

6      (b)    award Plaintiffs statutory damages in accordance with 17 U.S.C. §

7  504 and other applicable law;

8      (c)    award Plaintiffs costs and reasonable attorneys' fees in accordance

9  with 17 U.S.C. § 505, and other applicable law; and

10     (d)    award Plaintiffs such further and additional relief as the Court may

11  deem just and proper.

12

13  DATED: May 24, 2012                     ROBERT H. ROTSTEIN
                                            PATRICIA H. BENSON
14                                          JEAN PIERRE NOGUES
                                            MITCHELL SILBERBERG & KNUPP LLP
15

16                                          ROBERT H. ROTSTEIN
                                            Attorneys for Plaintiffs,
17                                          Survivor Productions LLC, CBS
                                            Broadcasting Inc., and CBS Studios Inc.
18

19

20

21

22

23

24

25

26

27

28                                          22

COMPLAINT FOR COPYRIGHT INFRINGEMENT, INDUCEMENT, CONTRIBUTORY INFRINGEMENT,
AND VICARIOUS INFRINGEMENT UNDER THE COPYRIGHT ACT

EXHIBIT A

## EXHIBIT A – SCHEDULE OF WORKS

1. 60 Minutes:  May 13, 2012 (application for copyright registration submitted May 22, 2012) – CBS Broadcasting Inc.

2. Blue Bloods, Black and Blue (copyright registration no. PA 1-768-102, Dec. 19, 2011) – CBS Studios Inc.

3. Blue Bloods, Lonely Hearts Club (copyright registration no.  PA 1-768-012, Dec. 19, 2011) – CBS Studios Inc.

4. CSI: Miami, By the Book (copyright registration no. PA 1-766-133, Nov. 23, 2011) – CBS Broadcasting Inc.

5. CSI: NY, Officer Involved (copyright registration no. PA 1-759-640, November 7, 2011) – CBS Broadcasting Inc.

6. CSI: Crime Scene Investigation, Genetic Disorder (copyright registration no. PA 1-771-490, Jan. 17, 2012) – CBS Broadcasting Inc.

7. CSI: NY, Air Apparent  (copyright registration PA 1-765-824, Nov. 16, 2011) – CBS Broadcasting Inc.

8. The Good Wife, Get A Room (copyright registration no. PA 1-768-219, Dec. 12, 2011) – CBS Studios Inc.

9. NCIS, Secrets (copyright registration no. PA 1-778-988, Mar. 13, 2012) – CBS Studios Inc.

10. NCIS: Los Angeles, Greed (copyright registration no. PA 1-768-118, Dec. 19, 2011) – CBS Studios Inc.

11. NCIS, Engaged Part 1 (copyright registration no. PA 1-768-452, Dec. 19, 2011) – CBS Studios Inc.

12. NCIS, Engaged Part 2 (copyright registration no. PA 1-768-447, Dec. 19, 2011) – CBS Studios Inc.

13. Survivor : One World, Perception is Not Always Reality (application for copyright registration filed May 24, 2012) – Survivor Productions LLC

4653327.1

Exhibit $A$
Page $23$

EXHIBIT  B

4650336.1/44025-00003





4650336.1/44025-00003



4650336.1 /44025-00003



## WATCH COMMERICAL-FREE TV

Hate commercials? DISH created commercial-free TV so you can save an hour each night† Now you can automatically skip commercials in primetime TV- on ABC, CBS, FOX and NBC, in HD. Only on the Hopper. Only from DISH.

*Feature must be enabled by customer and is subject to availability. Only available with playback of select shows.*

## Record up to 6 HD Channels at Once with PrimeTime Anytime™.

Record up to six live HD channels at once during primetime, including your 4 local HD networks and 2 channels of your choosing, and stream four recorded HD programs to different TVs simultaneously. That means you can watch more and miss less of your favorite programs.

## Massive 2 TB Hard Drive.

4650336.1/44025-00003







4650336.1 / 44025-00003



Exhibit B
Page 28

4650336.1/44025-00003



State-of-the-Art User Interface.

Hopper features a sleek HD user interface, with super-fast scrolling and colorful channel logos listed for easy visual reference. Watch Video

SRS TruVolume®.

The Hopper includes SRS TruVolume technology, which prevents annoying volume fluctuations. No need to adjust the volume and better yet, no more loud commercials!

Remote Control Locator.

Never lose your remote again! Press a button, and the Hopper will call your remote, so you can hear where it's hiding – and then get back to watching TV.

This feature is also available on all Joeys.

HOPPER    OVERVIEW    WHOLE-HOME HD DVR    PRIMETIME ANYTIME    FEATURES    APPS    MOVIES    REVIEWS

4650336.1/44025-00003



DISH Hopper - Hopper DVR - Hopper Whole House DVR - DISH - Windows Internet Explorer provided by HSN

File   Edit   View   Favorites   Tools

HOPPER ▶   OVERVIEW   WHOLE-HOME HD DVR   PRIME TIME ANYTIME   **FEATURES**   APPS   MOVIES   REVIEWS

**HOPPER VIDEO GALLERY.**

The Hopper - Overview

## Intuitive Search.

Search by title, actor, channel and more to find your favorite shows, recorded programs and On Demand content. Plus with predictive search, the Hopper will start showing results immediately as you type, so you'll find your favorite shows faster than ever.

## TV Everywhere™ Technology.

Connect your Hopper to the Sling® Adapter and experience TV Everywhere™ brand technology from DISH. Watch live TV programming and DVR recordings anywhere you travel. Watch Video

*Sling Adapter sold separately.*

## SIRIUSXM SATELLITE RADIO

Music lovers will love this. Only DISH offers over 70 channels of SiriusXM satellite radio, the same music channels available in your car, with America's Top 120, DishLATINO Clasico, and higher packages. DISH is the only pay TV provider to give you SiriusXM satellite music.

Share   More info

Exhibit ___B___
Page ___30___

4650336.1/44025-00003



HOPPER ▶   OVERVIEW   WHOLE-HOME HD DVR   PRIMETIME ANYTIME   FEATURES   APPS   MOVIES   REVIEWS

**Full Offer Details**

*Actual recording capacity for Hopper varies based on type of programming*
*"Based on viewing 4 one-hour shows per night*

**CORPORATE**
Our Company
Career Opportunities
Press Center
Investor Relations
Legal

**RESOURCES**
Find A Retailer
DishLATINO
Business Owners
DISH Media Sales

**CONNECT**
Send Feedback
Newsletter
Contact Us

© 2012, DISH Network L.L.C. All rights reserved.

Fan us on Facebook
Follow us on twitter


*Free for new and qualified former DISH customers. Restrictions apply.*

Exhibit B
Page 31

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Percy Anderson and the assigned discovery Magistrate Judge is Jay C. Gandhi.

The case number on all documents filed with the Court should read as follows:

## CV12- 4551 PA (JCGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=============================================================

## NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

ROBERT H. ROTSTEIN (SBN 72452) rxr@msk.com
PATRICIA H. BENSON (SBN    55) phb@msk.com
JEAN PIERRE NOGUES (SBN 84445) jpn@msk.com
MITCHELL, SILBERBERG & KNUPP LLP
11377 West Olympic Blvd.
Los Angeles, CA 90064-1683
(310) 312-2000

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CBS BROADCASTING INC.; CBS STUDIOS INC.; SURVIVOR PRODUCTIONS LLC | CASE NUMBER |
| PLAINTIFF(S) | **CV12-4551-PA (JCGx)** |
| v. | |
| DISH NETWORK CORPORATION; DISH NETWORK L.L.C | |
| | **SUMMONS** |
| DEFENDANT(S). | |

TO:    DEFENDANT(S):

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, <u>Robert H. Rotstein</u>, whose address is <u>MITCHELL SILBERBERG & KNUPP LLP, 11377 West Olympic Boulevard, Los Angeles, California 90064</u>. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:  **MAY 2 4 2012**

By: _____
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)                                    SUMMONS

American LegalNet, Inc.
www.FormsWorkFlow.com

**CIVIL COVER SHEET**

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
CBS BROADCASTING INC.; CBS STUDIOS INC.; SURVIVOR PRODUCTIONS LLC

**DEFENDANTS**
DISH NETWORK CORPORATION; DISH NETWORK L.L.C.

Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
ROBERT H. ROTSTEIN (SBN 72452) rxr@msk.com
MITCHELL, SILBERBERG & KNUPP LLP
11377 West Olympic Blvd.
Los Angeles, CA 90064-1683
(310) 312-2000

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No  ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
17 U.S.C. § 101, et seq. Copyright Infringement; Inducement of Copyright Infringement; Contributory Copyright Infringement; Vicarious Copyright Infringement

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 750 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☒ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities – Employment | ☐ 630 Liquor Laws | ☐ 861 HIA(1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities – Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number: _____ **CV12-4551**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)  CIVIL COVER SHEET  Page 1 of 2

American LegalNet, Inc.
www.Forms Workflow.com

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____ Date May 24, 2012
Robert H. Rotstein

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com